IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

CATHERINE NIPPER,                    *
                                     *
        Plaintiff,                   *
                                     *
                                     *        CV 123-085
             v.                      *
                                     *
PROGRESSIVE MOUNTAIN                  *
INSURANCE COMPANY and HEATH          *
JOHNSTON,                            *
                                     *
        Defendants.                  *

_____

**O R D E R**

_____

Before the Court is Defendants' motion to dismiss (Doc. 7),
which the Court converted into a motion for summary judgment on
February 2, 2024 (Doc. 14).  For the following reasons, Defendants'
motion is **GRANTED**.

**I. BACKGROUND**

The Court summarizes the insurance policy at issue, the
relevant facts, and the procedural history of the case thus far
below.

**A. The Policy**

Plaintiff owned a 1999 Honda Accord with VIN number
1HGCG6656XA128683 (the "Vehicle") that was insured by Defendant
Progressive Mountain Insurance Company's ("Progressive") policy

number 912426829 (the "Policy"). (Doc. 1-1, at 3; Doc. 17, at 2; Doc. 7-1, at 3; Doc. 7-2, at 2.)   The Policy was made out to Plaintiff and lists her address. (Doc. 7-2, at 2.)   The Policy's "Drivers and resident relatives" section lists two people: Plaintiff and her daughter, Iesha Nipper. (Id.)   The information concerning Plaintiff is separated from the information concerning Iesha Nipper by a gray dotted line. (Id.)   The information pertaining to Plaintiff is as follows: (1) she was fifty-four years old; (2) she is a female; and (3) she was single. (Id.)   Iesha Nipper's portion indicates she was: (1) twenty-seven years old; (2) a female; and (3) single. (Id.)   Plaintiff's portion of the "Drivers and resident relatives" section also includes a line that says: "Additional information: Named insured." (Id.)   Although Iesha Nipper's name appears below this line, Iesha Nipper's portion of the "Drivers and resident relatives" section does not include a line indicating she is also a named insured. (Id.)

The Policy's agreement provides that, if "you" pay the premium, Progressive will insure "you" for the coverages and limits of liability shown on the declarations page. (Id. at 8.)   Relevant here, the Policy defines "you" as "a person shown as a named insured on the declarations page." (Id. at 9.)   The Parties do not dispute Plaintiff paid the premium for the coverages indicated on the declarations page. (See Doc. 1-1, at 2; Doc. 17, at 3; see also Docs. 7-1, 8, 10.)   The Policy shows Plaintiff had two kinds

2

of coverage for the Vehicle: (1) Liability to Others ("Part I") and (2) Uninsured Motorist Coverage ("Part III"). (Doc. 7-2, at 3, 10-14, 17-21.) Both Part I and Part III have policy limits of $25,000 per person and $50,000 per accident. (Id. at 3.)

Part I's insuring agreement provides: "If you pay the premium for this coverage, we will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." (Id. at 10.) As used in Part I, "insured person" means "you, a relative, or a rated resident with respect to an accident arising out of the ownership, maintenance or use of an auto or a trailer." (Id. at 10.) "You" is defined as "a person shown as a named insured on the declarations page." (Id. at 9.) "Relative" means "a person residing in the same household as you, and related to you by blood." (Id. at 8.) "Rated resident" is "a person residing in the same household as you at the time of the loss who is not a relative." (Id.) Part I also provides that coverage under the provision, including Progressive's duty to defend, "will not apply to any insured person for: . . . bodily injury to you." (Id. at 11.)

Part III provides:

If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage:

1. sustained by an insured person;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.

(Id. at 17.)  Part III also defines "insured person" as "you, a relative, or a rated resident." (Id.) Part III defines "uninsured motor vehicle" as "a land motor vehicle or trailer of any type: . . . to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company . . . legally denies coverage." (Id. at 18.)  However, it provides an "uninsured motor vehicle" does not include a vehicle "owned by you, a relative, or a rated resident." (Id.)

## B. Factual Background

On June 16, 2018, Plaintiff and Iesha Nipper were involved in a car accident (the "Accident") that resulted in significant injuries to Plaintiff. (Doc. 1-1, at 3; Doc. 17, at 2.)  On July 7, 2020, Plaintiff filed a lawsuit against Iesha Nipper in the Superior Court of Richmond County, Georgia to recover for her injuries, alleging Iesha Nipper, who was driving the Vehicle at the time, negligently caused the Accident (the "Underlying Lawsuit"). (Doc. 1-1, at 3, 5; Doc. 17, at 2.)  On December 7, 2021, Plaintiff sent a letter to Defendant Heath Johnston ("Mr. Johnston"), the insurance adjuster assigned to Plaintiff's claim, offering to settle her claim in the Underlying Lawsuit for $25,000. (Doc. 1-1, at 12-13.)  Progressive did not make the settlement

4

payment.   (Doc. 1-1, at 3; Doc. 17, at 4.)   Progressive did not defend Iesha Nipper in the Underlying Lawsuit, and Iesha Nipper did not defend herself.   (Doc. 1-1, at 5; Doc. 17, at 5.)   As a result, on June 23, 2022, Plaintiff obtained a default judgment for $250,000 against Iesha Nipper.   (Doc. 1-1, at 5; Doc. 17, at 5.)   On June 28, 2022, Iesha Nipper assigned to Plaintiff any right she had against Progressive for exposing her to an excess judgment.   (Doc. 1-1, at 5.)

## C. Procedural History

On May 16, 2023, Plaintiff filed this action in the Superior Court of Richmond County, asserting claims against both Progressive and Mr. Johnston for breach of contract and negligent failure to settle.   (Doc. 1-1, at 1, 4-8.)   Plaintiff alleges Defendants breached the Policy when they did not properly and timely adjust and resolve Plaintiff's valid claim in the Underlying Lawsuit.   (Id. at 6.)   Plaintiff further contends Defendants acted negligently or in bad faith when they failed to settle the claim within the Policy's limits.   (Id. at 6-7.)   Plaintiff also seeks punitive damages and attorney's fees.   (Id. at 12.)

On June 30, 2023, Defendants removed, asserting the Court has subject-matter jurisdiction under 28 U.S.C. § 1332.   (Doc. 1, at 1.)   Defendants contend Mr. Johnston was fraudulently joined solely to defeat diversity, and his citizenship should therefore be disregarded for jurisdictional purposes.   (Id. at 2-3.)   Defendants

moved to dismiss on July 28, 2023, and they attached to their motion email communications between Plaintiff's counsel and Mr. Johnston. (Docs. 7, 7-3.) Plaintiff responded, and Defendants replied in support. (Docs. 8, 10.) After considering the Parties' arguments, the Court concluded it would be most efficient to consider the attached email correspondence, and any other relevant evidence outside the pleadings, because the motion to dismiss "turn[ed] on the relatively discrete issue of whether Iesha Nipper resided with Plaintiff at the time of the [A]ccident." (Doc. 14, at 5.) The Court thus converted Defendants' motion to dismiss into a motion for summary judgment. (Id.) Plaintiff was granted twenty-one days to conduct limited discovery and file any briefing and additional evidence, and Defendants were granted fourteen days thereafter to respond. (Id. at 5-6.) Plaintiff's deadline ran on February 23, 2024. (Id.; Doc. 15.) Plaintiff did not file any additional briefing or evidence.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole

could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted).  The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

Defendants do not bear the burden of proof at trial and therefore may "satisfy [their] initial burden on summary judgment in either of two ways." McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  First, they "may simply show that there is an absence of evidence to support [Plaintiff's] case on the particular issue at hand." Id. (citation omitted).  If this occurs, Plaintiff "must rebut by

7

either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. (citation omitted).   Or second, Defendants may "provide affirmative *evidence* demonstrating that [Plaintiff] will be unable to prove [her] case at trial." Id. (citation omitted and emphasis in original).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

In this action, the Clerk provided Plaintiff notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 15.)   For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are

8

satisfied.  The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.   In reaching its conclusions, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## III. DISCUSSION

Plaintiff asserts two substantive claims against both Defendants: (1) breach of contract, and (2) bad faith failure to settle. (Doc. 1-1, at 4-6.) Plaintiff also seeks punitive damages and attorney's fees and expenses of litigation under Georgia law. (Id. at 6-7.) The Court first addresses Plaintiff's claims against Mr. Johnston, then turns to Plaintiff's claims against Progressive.

### A. Claims Against Mr. Johnston

Defendants removed this action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1, at 1; Doc. 16, at 1.) Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question or (2) where diversity jurisdiction exists.  28 U.S.C. § 1441(a)-(b).  Federal courts, as courts of limited jurisdiction, must remand a case removed on diversity grounds where there is not complete diversity of citizenship between the parties or where one of the named defendants is a citizen of the state in which the

suit is filed.  28 U.S.C. § 1441(b).  An individual's citizenship is equivalent to "domicile" for 28 U.S.C. § 1332 purposes, "[a]nd domicile requires both residence in a state and 'an intention to remain there indefinitely.'"  Travaglio v. Am. Express Co., 735 F.3d 1266, 1269 (11th Cir. 2013) (quoting McCormick v. Aderholt, 293 F.3d 1254, 1258 (11th Cir. 2002)).  On the other hand, corporations — like Progressive — are citizens of (1) every state in which they are incorporated and (2) the state where their principal place of business is located.  28 U.S.C. § 1332(c)(1). Defendants' amended notice of removal provides: (1) Plaintiff is a Georgia citizen; (2) Progressive is an Ohio citizen; and (3) Mr. Johnston is a Georgia citizen.   (Doc. 16, at 2.)   Although Defendants' amended notice of removal represents Plaintiff and Mr. Johnston are both Georgia citizens, Defendants argue Mr. Johnston's citizenship should be disregarded because Plaintiff fraudulently joined him.  (Id. at 2-3.)

Courts may retain jurisdiction and "ignore the presence of [a] non-diverse defendant" when the plaintiff fraudulently joined that defendant solely to defeat federal diversity jurisdiction. Stillwell v. Allstate Ins., 663 F.3d 1329, 1332 (11th Cir. 2011) (citation omitted).  To establish fraudulent joinder, "the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or

(2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. (alterations adopted) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Crowe, 113 F.3d at 1538 (citation omitted). In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. (citation omitted). Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Stillwell, 663 F.3d at 1334-35 (finding that the district court erred in concluding defendant was fraudulently joined because "at the very least, [it was] possible that a Georgia state court would conclude that" plaintiff's complaint stated a cause of action against defendant given Georgia's notice pleading standards).

The Court finds Defendants carried their burden of proving there is no possibility Plaintiff can establish a cause of action against Mr. Johnston. See Stillwell, 663 F.3d at 1332 (citation

omitted).  Plaintiff brings a breach of contract claim and a bad faith failure to settle claim against Mr. Johnston — the insurance adjuster — both of which arise from Progressive's alleged failure to handle and settle Iesha Nipper's claim in the Underlying Lawsuit.  (Doc. 1-1, at 4-6, 12; Doc. 16, at 2.)  However, in Georgia, an insurance adjuster is not liable to the insured for the insurer's failure to settle a claim because the insured and the insurance adjuster, unlike the insured and the insurer, are not in privity of contract.  See Dumas v. ACCC Ins., 349 F. App'x 489, 491-92 (11th Cir. 2009) (citations omitted) ("In the absence of privity of contract, an insurance adjuster is not liable to an insured for a failure to settle claim against an insured").

Defendants argue no cause of action exists against Mr. Johnston as a matter of law and he should be dismissed as fraudulently joined.  (Doc. 7-1, at 7.)  Plaintiff concedes Defendants' grounds for dismissing Mr. Johnston are valid and agrees the claims against him should be dismissed.  (Doc. 8, at 1.)  For these reasons, summary judgment is **GRANTED** as to Plaintiff's claims against Mr. Johnston.  Because the Court finds Mr. Johnston was fraudulently joined, the Court retains jurisdiction over this case.  See Stillwell, 663 F.3d at 1332 (citation omitted).  The Court now turns to Plaintiff's claims against Progressive.

**B. Claims Against Progressive**

The Court addresses each of Plaintiff's claims against Progressive in turn.

  1. Breach of Contract

Plaintiff, as Iesha Nipper's assignee, asserts a breach of contract claim against Progressive, alleging Progressive breached the Policy by failing to properly and timely adjust and resolve a valid pending claim. (Doc. 1-1, at 6.) According to Plaintiff, the fact that Iesha Nipper's name appears below the line that says "Additional information: Named insured" in the "Drivers and resident relatives" section of the Policy creates an ambiguity as to whether Iesha Nipper was a named insured. (Id. at 4.) Because ambiguities in insurance contracts are construed in favor of the insured, Plaintiff argues Progressive breached the Policy by not providing coverage for Iesha Nipper or defending her in the Underlying Lawsuit. (Id. at 3-5; Doc. 8, at 4.) Progressive contends it did not breach the Policy by failing to defend Iesha Nipper in the Underlying Lawsuit because the Named Insured Exclusion in Part I (the "Exclusion") bars coverage for Plaintiff's claim. (Doc. 7-1, at 7-11.) The Court agrees with Progressive.

Under Georgia law, the construction of a contract "is a question of law for the court." Am. Empire Surplus Lines Ins. v. Hathaway Dev. Co., 707 S.E.2d 369, 371 (Ga. 2011). Insurance "is a matter of contract and the parties to the contract of insurance

are bound by its plain and unambiguous terms." <u>Hurst v. Grange</u>
<u>Mut. Cas. Co.</u>, 470 S.E.2d 659, 663 (Ga. 1996). "Words used in the
policy are given their usual and common meaning, and the policy
should be read as a layman would read it and not as it might be
analyzed by an insurance expert or an attorney." <u>Liberty Surplus</u>
<u>Ins. v. Norfolk S. Ry. Co.</u>, 684 F. App'x 788, 790 (11th Cir. 2017)
(quoting <u>Ga. Farm Bureau Mut. Ins. v. Smith</u>, 784 S.E.2d 422, 424
(Ga. 2016)). An insurance company is permitted to "fix the terms
of its policies as it sees fit, so long as they are not contrary
to the law," and it is free "to insure against certain risks while
excluding others." <u>Smith</u>, 784 S.E.2d at 424.

Consistent with the general rule governing contract
interpretation, construction of an insurance contract is a
question of law. <u>Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau</u>,
144 F.3d 1372, 1375 (11th Cir. 1998) (applying Georgia law). Under
Georgia law, an insurer's refusal to defend is justified only if
the complaint "does not assert any claims upon which there would
be insurance coverage." <u>City of Atlanta v. St. Paul Fire & Marine</u>
<u>Ins.</u>, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). As with the general
interpretation of insurance contracts, any doubt as to an insurer's
duty to defend "should be resolved in favor of the insured."
<u>Claussen v. Aetna Cas. & Surety Co.</u>, 380 S.E.2d 686, 678-88 (Ga.
1989); <u>Penn-Am. Ins. v. Disabled Am. Veterans, Inc.</u>, 490 S.E.2d
374, 376 (Ga. 1997). To succeed on summary judgment that it has

no duty to defend, Progressive must show the terms of the Policy "unambiguously exclude coverage." BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 685 (Ga. Ct. App. 2007).

Under Georgia's contract construction methodology, the first question is whether the terms contained in the Policy are unambiguous. City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013) (citation omitted). "Where the contractual language is explicit and unambiguous, 'the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" Jones v. Golden Rule Ins., 748 F. App'x 861, 864 (11th Cir. 2018) (quoting Smith, 784 S.E.2d at 424). In determining whether the relevant terms are unambiguous, the Court looks to the Policy's text. Smith, 784 S.E.2d at 424.

a. *Coverage Under Part I*

Part I of the Policy provides "[i]f you pay the premium for this coverage, we will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." (Doc. 7-2, at 10.) Coverage, however, under the Exclusion, "will not apply to any insured person for: . . . bodily injury to you." (Id. at 11.) "You" means "a person shown as a named insured on the declarations page." (Id. at 9.)

The declarations page provides Plaintiff is a named insured. (Id. at 2.)

Progressive argues it did not have a duty to defend Iesha Nipper in the Underlying Lawsuit because the Exclusion bars coverage. (Doc. 7-1, at 7-8; Doc. 10, at 5.) Plaintiff contends Progressive failed to properly adjust and resolve a valid claim and that the exclusions are void. (Doc. 8, at 3,5.) There is no dispute that the Underlying Lawsuit sought to recover for Plaintiff's bodily injuries allegedly caused by Iesha Nipper's negligence. (Doc. 1-1, at 2; Doc. 17, at 2.) The Court finds the language of the Exclusion is unambiguous and excludes coverage for Plaintiff's, as the named insured's, bodily injuries in the Underlying Lawsuit. (Doc. 7-2, at 11.) Thus, the Court concludes Progressive had no duty to defend Iesha Nipper in the Underlying Lawsuit because it was brought by Plaintiff, a named insured, to recover damages for her own bodily injuries. (Id.; Doc. 1-1, at 2, 3, 5.)

Plaintiff argues, however, that the Exclusion is void and should not apply because its application would violate Georgia public policy. (Doc. 8, at 5.) Defendant contends the Exclusion does not violate public policy "because Iesha Nipper does not qualify as a relative insured under the Policy, but is instead only a permissive driver." (Doc. 7-1, at 8.) Both Plaintiff and Defendants point to Landrum v. Infinity Safeguard Ins., 734 S.E.2d

520 (Ga. Ct. App. 2012), in their analyses of whether the Exclusion violates public policy.  (Doc. 8, at 5; Doc. 7-1, at 8-9.)

In Landrum, the named insured was a passenger in a car she owned, which was being driven by her grandson when he caused a accident.  734 S.E.2d at 521.  At the time of the accident, the grandson resided with the named insured, had no other vehicle, and did not have his own insurance.  Id.  The named insured filed a lawsuit against her grandson seeking damages for injuries resulting from the accident and sought coverage under her insurance policy.  Id.  Her insurance policy contained a similar exclusion to the one here, and her insurer filed a decaratory judgment action seeking clarification on its obligations and arguing the exclusion applied.  Id.  The insured and her grandson contended the exclusion violated public policy because her grandson would be left with unfair exposure to liability.  Id.   In analyzing the insurer's duties, the Landrum court stated, "the [Georgia] Supreme Court has recognized that a policy exclusion should be voided to protect either an innocent victim or an insured facing unfair exposure to unanticipated liability."  Id. at 523 (citing Stepho v. Allstate Ins., 383 S.E.2d 887, 888 (Ga. 1989)).  It also recognized a named insured "is presumed to have knowledge of the contents of her policy, and she therefore cannot void the policy exclusion on the ground that she is an innocent member of the motoring public."  Id. (citing S. Guar. Ins. v. Preferred Risk Mut. Ins., 359 S.E.2d

17

665 (Ga. 1987); <u>Spivey v. Safeway Ins.</u>, 437 S.E.2d 641 (Ga. Ct. App. 1993)). The <u>Landrum</u> court found that the grandson was not a "relative" under the policy, and was thus just a "mere permissive driver." <u>Id.</u> at 522. It found that in Georgia, there is "a bright line rule against voiding a policy exclusion for permissive users." <u>Id.</u> at 523 (citations omitted). Because the named insured was presumed to be aware of the contents of her policy and that her grandson, as a permissive driver, was excluded, she was not an innocent member of the motoring public nor did she have unfair exposure to unanticipated liability. <u>Id.</u> For these reasons, the <u>Landrum</u> court affirmed the trial court's grant of summary judgment to the insurer, finding the exclusion was not void under public policy and it was applicable to the grandson. <u>Id.</u>

Accordingly, the only way for the Exclusion to be voided as against public policy is if applying it would unfairly expose an *insured* person, as innocent victim of the motoring public, to unanticipated liability. <u>See id.</u> (citation omitted). Here, Plaintiff, as the named insured, is presumed to be aware of the contents of the Policy, including the Exclusion, and she "therefore cannot void the policy exclusion on the ground that she is an innocent member of the motoring public." <u>Id.</u> (citations omitted). The analysis, however, does not end there. <u>Id.</u> To determine whether applying the Exclusion would violate Georgia public policy or would expose Plaintiff to unanticipated liability, the Court

must also determine whether Iesha Nipper is insured under the Policy or is merely a permissive driver.  Id.  Here, the Policy defines "insured person" as "you, a relative, or a rated resident with respect to an accident arising out of the ownership, maintenance or use of an auto or a trailer."  (Doc. 7-2, at 10.)

As an initial matter, the Court finds Iesha Nipper does not qualify as an "insured person" under the Policy's definition of "you."  The Policy's declarations page lists two names under the section titled "Drivers and resident relatives": Plaintiff's and Iesha Nipper's.  (Id. at 2.)  Each section within the "Drivers and resident relatives" is separated by a gray dotted line.  (Id.)  Each section includes demographic information, but Plaintiff's section also includes the following: "Additional Information: Named Insured."  (Id.)  Plaintiff argues the additional information in her part of the "Drivers and resident relatives" section creates an ambiguity as to whether Iesha Nipper is a named insured because Iesha Nipper's name appears under the line that says "Additional Information: Named Insured."  (Doc. 1-1, at 2-3; Doc. 8, at 4.) Plaintiff further argues the ambiguity is compounded by the fact that "named insured" is not defined in the Policy.  (Doc. 8, at 5.)  Defendants contend there is no ambiguity and that "Iesha Nipper is not a named insured, but rather a named driver."  (Doc. 10, at 3.)

19

The Court finds the Policy unambiguously provides that Plaintiff, not Iesha Nipper, is the named insured. Plaintiff's information and Iesha Nipper's information are clearly separated by a gray dotted line, and the "Additional information: Named insured" line falls only in Plaintiff's portion of the "Drivers and resident relatives" section. (Doc. 7-2, at 2.) The Court agrees with Progressive that "the Policy's otherwise clear reference to [Plaintiff] as the named insured is not rendered ambiguous by the simple fact that another driver is listed on the declarations page of the Policy." (Doc. 10, at 3 (citing Ga. Farm Bureau Mut. Ins. v. Wilkerson, 549 S.E.2d 740, 742 (Ga. Ct. App. 2001); Griffin v. State Farm Mut. Auto. Ins., 199 S.E.2d 101, 104 (Ga. Ct. App. 1973)).) Furthermore, the Policy was issued solely to Plaintiff at her address. (Doc. 7-2, at 2.) To the extent Plaintiff argues the Policy is ambiguous because it does not define "named insured," the Georgia Court of Appeals has held a policy need not define "named insured," and a policy is not made ambiguous simply because it does not contain such a definition. Wilkerson, 549 S.E.2d at 742. For these reasons, the Court finds the Policy unambiguous: Iesha Nipper is not a named insured under the Policy. Accordingly, Iesha Nipper does not meet the Policy's definition of "you."

Iesha Nipper may still be covered under the definition of "insured person" in Part I if she is either a "relative" or "rated

resident" as defined in the Policy. (Id. at 10.) Iesha Nipper can only be a "relative" or a "rated resident" if she resided in the same household as Plaintiff. (See id.) Defendant argues Iesha Nipper cannot meet these definitions because the evidentiary record shows Iesha Nipper did not live with Plaintiff at the time of the Accident. (Doc. 7-1, at 10-11; Doc. 10, at 4-5.)

To determine whether a person lived in the same household as the insured, Georgia courts consider "the aggregate details of the family's living arrangements" and "whether the family members have established and maintained separate households under different managements" is of critical importance. Burdick v. GEICO, 626 S.E.2d 587, 589 (Ga. Ct. App. 2006) (citation omitted). Here, the Policy lists Plaintiff's address as 2622 Castletown Dr., Hephzibah, GA 30815. (Doc. 7-2, at 2.) Plaintiff's counsel, in an email to Mr. Johnston, stated Iesha Nipper did not meet the Policy's definition of "relative" because she "was living at 2430 Nordahl Cr.[,] Augusta, G[A] at the time of [the Accident]. (Doc. 7-3, at 2.) While Plaintiff alleges Iesha Nipper resided with her at the time of the Accident, there is no evidence indicating the same. (Doc. 8, at 4.)

At the summary judgment stage, Plaintiff "must rebut [Defendants' evidence] by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to

withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." McQueen, 955 F. Supp. 2d at 1262 (citation omitted). Plaintiff's conclusory arguments do not meet this burden. Thus, the Court finds there is no genuine dispute that Iesha Nipper did not reside in the same household as Plaintiff at the time of the Accident, and Iesha Nipper is not a "relative" or "rated resident" under the Policy. (Doc. 7-2, at 9.) Since Iesha Nipper does not meet the Policy's definitions of "you," "relative," or "rated resident," she is not an "insured person" as defined in Part I and was therefore, at best, a permissive driver at the time of the Accident. (Id. at 10.)

Accordingly, the Court finds the Exclusion does not violate Georgia's public policy against an insured person facing unfair exposure to unanticipated liability. See Landrum, 734 S.E.2d at 523. Based on these findings, the Court finds the Exclusion applies and bars coverage under Part I.

b. *Coverage Under Part III*

The Policy's declarations page indicates Plaintiff also had uninsured motorist coverage under Part III. (Doc. 7-2, at 3.) The provision provides:

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage:
> 1. sustained by an insured person;
> 2. caused by an accident; and

22

3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.

(Id. at 17.) But Part III provides an "uninsured motor vehicle" does not include a vehicle "owned by you, a relative, or a rated resident." (Id.)

Progressive argues the Court should not consider whether Part III applies because Plaintiff's complaint does not allege she ever made a claim under Part III or that Progressive breached the policy by not providing her coverage under Part III. (Doc. 10, at 6.) However, Plaintiff's complaint alleges "Plaintiff retained counsel in 2020 and attempted to resolve her claim with [Progressive] either under the liability policy *or the uninsured policy* on her vehicle." (Doc. 1-1, at 3 (emphasis added).) The complaint further alleges that the Policy "contains clauses that exclude Plaintiff from making a claim for liability *or uninsured motorist insurance coverage* on an owned vehicle" and that one or both clauses violate Georgia public policy. (Id.) While these allegations do not clearly set out that Plaintiff intends to bring a claim for breach of contract pursuant to Part III, out of an abundance of caution, the Court considers whether Part III provided Plaintiff coverage for the injuries sustained in the Accident.

Because Part III applies to damages an "insured person is legally entitled to recover," the relevant "insured person" in Part III is Plaintiff, who is entitled to recover the default

judgment from Iesha Nipper in the Underlying Lawsuit. Plaintiff is listed as the named insured on the declarations page, so she is an "insured person" under the Policy. (Id. at 2, 9, 17.) The Court turns to whether the Policy's exclusion, which bars coverage of a vehicle "owned by you, a relative, or a rated resident," is applicable. The Parties do not dispute that Plaintiff owned the Vehicle. (Doc. 1-1, at 3; Doc. 17, at 2.) Plaintiff argues, however, the fact that she owned the Vehicle should not bar her claim under Part III because the multiple definitions of "insured person" throughout the Policy and the definition of "covered auto" somehow make the above portion of the Policy ambiguous. (Doc. 8, at 6.) The Court disagrees.

"Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy." Trinity Outdoor, LLC v. Cent. Mut. Ins., 679 S.E.2d 10, 12 (Ga. 2009) (citation omitted). As a result, an insurance company "may agree to insure against certain risks while declining to insure against others." Id. (citation omitted). When an insurance policy's "language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Id. (citation omitted).

Here, Part III is unambiguous: a vehicle is not an "uninsured motor vehicle" if it is "owned by you." (Doc. 7-2, at 18.) As discussed above, Plaintiff meets the definition of "you" because she is listed as a named insured on the declarations page. (Id. at 2, 9.) The Vehicle is thus not an "uninsured motor vehicle," and Part III does not cover Plaintiff's injuries as a result of the Accident. Because neither Part I nor Part III provide coverage, Progressive has not breached the Policy and summary judgment is **GRANTED** as to Plaintiff's breach of contract claim.

2. Bad Faith Failure to Settle

Plaintiff also asserts a bad faith failure to settle claim against Progressive. (Doc. 1-1, at 6.) There can be no bad faith for failure to settle a claim where there is no coverage under the Policy. Green v. Allstate Fire & Cas. Ins., No. 2:15-CV-205, 2018 WL 2057356, at*5 (N.D. Ga. Mar. 27, 2018) ("Because Plaintiffs' loss is not covered by their insurance policy . . . they cannot recover damages for [the insurance company]'s investigation of their claim and subsequent refusal to pay."). Because the Court already found there was no coverage for Plaintiff's claims under the Policy, her bad faith claim fails as a matter of law. See Landrum v. Allstate Ins., No. 5:18-cv-00458, 2019 WL 5068656, at *4 n.9 (M.D. Ga. Oct. 9, 2019) (granting summary judgment for the insurance company on the plaintiff's breach of contract claim and dismissing the plaintiff's bad faith claim because "there is no

coverage as a matter of law"). Accordingly, summary judgment is **GRANTED** as to this claim.

    3. <u>Punitive Damages and Attorney's Fees</u>

Plaintiff also seeks punitive damages and attorney's fees against Defendants. (Doc. 1-1, at 6-7.) "The derivative claims of attorneys fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim." <u>ABH Corp. v. Montgomery</u>, 849 S.E.2d 30, 33 (Ga. Ct. App. 2020) (citation omitted). Because the Court granted summary judgment on Plaintiff's substantive claims, summary judgment is **GRANTED** as to Plaintiff's claims for punitive damages and attorney's fees. <u>See Bolton v. Golden Bus.</u>, 823 S.E.2d 371, 373 (Ga. Ct. App. 2019).

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss, converted into a motion for summary judgment (Doc. 7), is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** any remaining motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 21ST day of March, 2024.

                                             _____

                                           J. RANDAL HALL, CHIEF JUDGE
                                           UNITED STATES DISTRICT COURT
                                           SOUTHERN DISTRICT OF GEORGIA